UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FIDEL GARIBAY,<br><br>Defendant. | Case No. 3:17-cr-00110-LRH-CLB-2<br><br>ORDER |

Before the court is Fidel Garibay's pro se motion to vacate, set aside, or correct sentence brought pursuant to 28 U.S.C. § 2255. ECF No. 43. On December 2, 2019, the court ordered the Government to respond to Garibay's motion within 45 days of the court's order (by January 16, 2020). ECF No. 44. The Government filed its response on January 6, 2020, opposing Garibay's motion.[1] ECF No. 49. No reply was filed. Also before the court is Garibay's motion to enter default judgment of severe prejudice to defendant's prospective hearing of immigration or to hear this case on the merits. ECF No. 51. Upon review of the record, the court denies all pending motions.

**I.    BACKGROUND**

Garibay was charged in a three count indictment on November 29, 2017 with (1) Conspiracy to Possess with Intent to Distribute and to Distribute at least 500 Grams of a Mixture and Substance containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846; and (2) Possession with Intent to Distribute at

---

[1] The Government certifies that this opposition was filed and served via CM/ ECF and mailed to Garibay at Taft Correctional Institute by first-class mail. *See* ECF no. 49 at 9.

1

least 500 Grams of a Mixture and Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii).[2] ECF No. 16. Garibay, on November 16, 2017, drove a silver colored 2017 GMC Yukon, with Florida plate 03065V from Douglas County, Nevada, to the Nugget Casino parking lot located in Sparks, Nevada. ECF No. 34 at 5. While petitioner waited in the car, his passenger, Perez, took a suitcase from the vehicle, entered the Casino, and arranged the sale of four pounds of methamphetamine to an FBI confidential source. *Id.* at 4-5. Garibay and Perez were then arrested, and officers found the suitcase contained 1763 grams of actual/ pure methamphetamine. *Id.* at 5. In a post-*Miranda* statement, Garibay admitted that he knew the suitcase contained methamphetamine and that he had driven it from California to Reno with Perez. *Id.*

Garibay pleaded guilty to count one of the indictment on May 29, 2018, with the government dismissing count two. ECF Nos. 31, 34 & 40. At his sentencing hearing held on August 14, 2018, the court sentenced Garibay to 57 months incarceration to be followed by 5 years of supervised release. ECF Nos. 40 & 42. Garibay did not appeal his sentence.

While he was serving his sentence, Garibay "learned after talking to an immigration officer in prison" that his conviction was an aggravated felony under 8 U.S.C. § 1101(a)(43(B), and that deportation was mandatory. ECF No. 43 at 5. Garibay then filed his section 2255 motion to vacate, set aside, or correct his sentence, arguing that he received ineffective assistance of counsel because he was not properly informed of the immigration consequences of his plea.

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a prisoner may move the court to vacate, set aside, or correct a sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United

---

[2] He was charged in the indictment alongside Salvador Perez, who alone was charged with count 3 in the indictment.

States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." *Id.* § 2255(b). However, no hearing is required if the "allegations, 'when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.'" *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984).

## III. DISCUSSION

### A. Garibay's motion is untimely.

Pursuant to 28 U.S.C. § 2255, petitioners must raise their claims within the one-year statute of limitations, generally, from the date petitioner's conviction became final. 28 U.S.C. § 2255(f). Because Garibay did not file a direct appeal following his sentencing on August 14, 2018, Garibay's conviction became final on August 28, 2018. *U.S. v. Gilbert*, 807 F.3d 1197, 1199 (9th Cir. 2015) ("if the movant does not pursue a direct appeal to the Court of Appeals, the conviction becomes final when the time for filing a direct appeal expires."). Garibay filed the instant motion on November 25, 2019 (*see* ECF No. 43), well after the one-year statute of limitations expired on August 28, 2109.

Garibay appears to recognize that his petition is untimely and cites to the applicable equitable tolling legal standard in his petition. ECF No. 43 at 14. For Garibay's petition to be deemed timely under equitable tolling, he must demonstrate "'(1) that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. Digulielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is only available when "extraordinary circumstances beyond a prisoner's control make it *impossible* to file a petition on time and the extraordinary circumstances were the cause of [the prisoner's] untimeliness." *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (emphasis in original) (internal quotation marks and citation omitted). The standard required to meet the equitable tolling threshold is very high. *Gilbert*, 807 F.3d at 1202. Despite citing to the operative law, Garibay does not explain what extraordinary circumstances made it impossible for him to file his petition on time. Accordingly, equitable tolling is not applicable.

3

If a court determines that a petitioner's §2255 petition is untimely, it must give the petitioner an opportunity to show why his untimeliness should be excused before the court dismisses his petition. *Day v. McDonough*, 547 U.S. 198, 210–11 (2006). The Court will not order Garibay to make this showing because even if he could demonstrate that he qualifies for equitable tolling, as discussed below, he is not entitled to relief on the merits of his section 2255 motion.

**B. Garibay is not entitled to relief on the merits of his section 2255 motion.**

Garibay argues that his attorney was ineffective because he provided incorrect advice about the immigration consequences of his guilty plea. ECF No. 43 at 4-7. He argues that his counsel advised him that it was a "mere possibility" that he would be deported as a result of his plea. *Id.* at 4. Garibay further argues that at the plea hearing, "both petitioner and the plea court stated that deportation was a 'possibility,'" when in fact deportation was mandatory for his conviction. *Id.* at 5.

During plea negotiations, defendants are entitled to the assistance of competent counsel. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). For Garibay to demonstrate that he received ineffective assistance of counsel, he must prove that (1) his counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that but for his counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The "performance" requirement charges the petitioner with demonstrating that his counsel made errors so serious that his attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. He must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The Court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. When doing so, the Court should make every attempt to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. There is a strong presumption that counsel's performance was reasonable and within the appropriate professional standard. *Id*. The ordinary *Strickland* analysis for the prejudice component is inapplicable in this case because

4

petitioner pleaded guilty rather than having been adjudicated guilty following a trial. Thus, to establish the prejudice prong of *Strickland*, petitioner must demonstrate that there is a reasonable probability that but for his counsel's errors, the outcome of the plea-bargaining process would have been different. *See Lafler*, 566 U.S. at 164.

The Court finds Garibay's arguments and assertions to be unsupported by the record. Garibay's plea agreement, which was filed on the public docket, contained the following paragraph addressing the immigration consequences of his guilty plea:

> <u>Removal/ Deportation Consequences</u>. The defendant understands and acknowledges that if he is not a United States citizen, then it is highly probable that he will be permanently removed (deported) from the United States as a consequence of pleading guilty under the terms of this Plea Agreement. The defendant has also been advised if his conviction is for an offense described in 8 U.S.C. § 1101(a)(43), he will be deported and removed from the United States and will not be allowed to return to the United States at any time in the future. The defendant desires to plead guilty regardless of any immigration consequences that may result from his guilty plea, even if the consequence is automatic removal from the United States with no possibility of returning. The defendant acknowledges that he has specifically discussed these removal/ deportation consequences with his attorney.

ECF No. 34 at 15.

At Garibay's May 29, 2018 change of plea hearing, the court canvassed Garibay to ensure that he fully understood the consequences that would result from entering a guilty plea. During that proceeding, Garibay acknowledged that he had read the full plea agreement and discussed it with his attorney:

> THE COURT: Do I understand, Mr. Cameron, that there's a potential deportation issue here too?
>
> MR. CAMERON: There is, Your Honor. It's a matter my client and I have gone over; we went over it again today prior to court to make sure he understands.
>
> THE COURT: All right. And, Mr. Garibay, do you understand that it's possible that you will be deported from the United States upon completion of a prison sentence and that you would not be able to ever return to the United States?
>
> THE DEFENDANT: Yes, Your Honor, I understand completely.
>
> . . .
>
> THE COURT: With regard to the plea agreement in this case, were you able to carefully read it and fully discuss it with your attorney before you signed it?

5

THE DEFENDANT: Yes, Your Honor, I did.

THE COURT: Do you fully understand the agreement?

DEFENDANT: Yes, Your Honor, I do understand.

ECF No. 47 at 12-13.

The record in this case is clear—while under oath, Garibay confirmed to the court that he read the entire plea agreement, including the immigration provision, and discussed it fully with his attorney prior to entering a guilty plea. Garibay cannot now claim that he was misled by his attorney about the lack of an immigration provision when he himself read the plea agreement and represented to the Court that he understood that following the completion of his sentence, it was highly probable that he would be deported. As the Supreme Court has stated, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Garibay has not given the Court any reason why it should believe the statements contained within his petition over the sworn statements he made during his change of plea hearing. *See, e.g.*, *id.* at 73–74 ("representations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *Shah v. U.S.*, 878 F.2d 1156, 1160 (9th Cir. 1989) ("common sense suggests that it would highly unusual for defense counsel to give a client the advice Shah asserts that he received. This is particularly true in light of the district court's own knowledge of defense counsel's competence and experience.").

Therefore, Garibay's section 2255 motion fails on the merits and is denied. The court finds that because Garibay's motion is based on the record, an evidentiary hearing is unnecessary for it to reach this conclusion. *See United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989) ("The district court may deny a section 2255 motion without an evidentiary hearing only if the movant's allegations, viewed against the record, either do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.").

///

///

### C. Garibay is denied a certificate of appealability.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255" unless a district court issues a certificate of appealability based on "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). To obtain a certificate, a habeas "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen v. Ornoski*, 435 F.3d 946, 950–51 (9th Cir. 2006) (internal quotation marks and citation omitted). To meet this threshold inquiry, a petitioner must demonstrate that "the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner], or that the questions are adequate to deserve encouragement to proceed further." *Id.* (internal quotation marks and citation omitted). The Court will not issue a certificate of appealability in this case. Garibay has not managed to produce an explanation as to why he repeatedly affirmed that he fully understood the terms his plea agreement during his change of plea hearing when, as he now claims, he did not. No reasonable jurist would find his claims to be credible.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Garibay's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 43) is **DENIED** because his petition is untimely and because it fails on the merits. The court finds that an evidentiary hearing is not needed to reach this conclusion.

IT IS FURTHER ORDERED that Garibay is **DENIED** a certificate of appealability.

///
///
///
///
///
///
///

IT IS FURTHER ORDERED that Garibay's Motion for Entry of Default Judgment of Severe Prejudice to Defendant's Prospective Hearing of Immigration or to Hear this Case on the Merits (ECF No. 51) is **DENIED** because the Government filed its response (ECF No. 49) to the instant motion within the court ordered time.

The Clerk of Court is directed to enter **JUDGMENT** in accordance with this Order.[3] *See Kingsbury v. United States*, 900 F.3d 1147 (9th Cir. 2018).

IT IS SO ORDERED.

DATED this 24th day of March, 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[3] This Order and Judgment is to also be filed in related civil case, *Garibay v. United States*, Case No. 3:19-cv-00711-LRH.